## Dora F. Hook *vs.* Washington G. L. George.

In an action for breach of a promise of marriage it appeared that the defendant wrote a letter to the plaintiff, asking to be released from his agreement to marry her, a few days after an interview between them, at which, he testified, she refused to live on a farm which he had provided for their home, and said that he was ashamed of her and wanted to put her out of sight, and also refused to live with his daughter; and he relied on these refusals for his justification. But she contradicted his testimony by her own as to what occurred at the interview. Upon his then calling a witness to testify that, "at some time after" the date of the letter, the plaintiff, speaking of the defendant's daughter to the witness, said: "I hate her. She shall never live with me, and I will never live with her. George [the defendant] is ashamed of me and wanted to take me out of the way. I will never go upon the farm to live;" the presiding judge instructed the jury to disregard this testimony so far as it consisted of a statement of the then present feelings of the plaintiff. *Held*, that this instruction was a good ground of exception.

Contract for breach of a promise of marriage.    At the trial in the superior court, before *Putnam*, J., the defendant, in opening his case, admitted his promise to marry the plaintiff, " and relied on matters which occurred at an interview between the parties on March 18, 1867, as a justification to himself for then separating from the plaintiff and subsequently marrying another person ; " and testified that at that interview he told the plaintiff that he had made arrangements for a home on a farm in Amesbury, and proposed to live there, but she utterly refused to live there, and said " that she would not marry him to go upon the farm, and he was ashamed of her and wanted to put her out of sight; " that at the same interview, " as they were settling their plans of marriage and residence afterwards, he stated to her that he intended to have his daughter Alice, [a child of a

former marriage terminated by a divorce,] who was about eigh teen years of age and depending on him for support, live with them when they were married, and she replied that she would be cursed if she would live under the same roof with his daughter, and that she would not be married and have her live in the house, and called her very low and opprobrious names; that he expostulated, but she became so enraged that he was obliged to drop the subject, and he went home to Haverhill, and there wrote to her a letter dated March 24, 1867, which letter had already been put into the case by the plaintiff," and all but the formal parts of which were as follows:

" I hardly know what to write. I have had the blues ever since I came here. I have been thinking over the conversation we had when I was at Salem. I was very much pained to hear the sentiments you expressed, and the manner and warmth in which you expressed yourself. Alice is my child. I love her as my child, whatever her faults may be. I am not altogether responsible for them. I did hope and did suppose that there was a better feeling existing between you and her than there is. I find that time has widened the breach between you instead of closing it. I was in hope that gone-byes were to be laid aside, but I find that you treasure up the past with a jealous care. I would fain believe that the sentiment that you expressed did not come from your heart; but, knowing you as well as I do, I should be deluding myself to believe otherwise. After a careful consideration of the whole matter, I have come to the following conclusion: that our union would be anything but a happy one; and, however painful the separation may be to both of us, it will eventuate in our future happiness. Therefore I would most respectfully ask to be relieved from our engagement."

" The plaintiff, upon her own examination in chief and cross-examination, gave a different version of the interview of March 18; denied that she refused to live on the farm, or with Alice, or imposed any conditions on her promise to marry the defendant, or used towards Alice the language attributed to her by the defendant, or ever called her offensive names; but admitted that she did express to him her wish to live elsewhere than on the

farm, and her desire that Alice should not live with them, and that she discussed these matters with him; denying, however, that she made them conditions or refused to yield to his wishes in these respects, and asserting that she stated her willingness to be governed by his judgment in the matter.

" The defendant then introduced other witnesses to show that the plaintiff had made use of similar expressions in regard to Alice before the interview of March 18, and had stated afterwards that the engagement was broken off in consequence of such refusal to marry and go on the farm, or to live with Alice; and then offered a witness, who stated that, at some time after the engagement was broken off by said letter, the plaintiff in a conversation with the witness, speaking of Alice, said: ' I hate her. She shall never live with me, and I will never live with her. George [the defendant] is ashamed of me and wanted to take me out of the way. I never will go upon the farm to live.' The defendant offered this to corroborate the statement of the defendant, and render it probable that his version of the interview was correct. There had been no communication between the parties after the interview of March 18, except by the defendant's letter of March 24." " The judge ruled, upon this evidence, that evidence of what the plaintiff said after March 24, in regard to her then present feelings, (at the time she said it,) was inadmissible ; that the defendant might show any statements made by her, at any time, in relation to her feelings about the farm, or about Alice, prior to the letter of March 24, but that evidence of her subsequent feelings was immaterial. This witness and one or two others were examined on this subject, and their statements were all made to the court, in the presence of the jury, who were instructed to disregard so much of it as consisted of statements of her then present feelings."

The jury found for the plaintiff, with damages in the sum of $3000 ; and the defendant alleged exceptions.

*W. C. Endicott,* (*J. C. Perkins* with him,) for the defendant.

*S. B. Ives, Jr.,* for the plaintiff.

CHAPMAN, C. J.   The defendant's letter to the plaintiff, written on the 24th of March 1867, speaks of the pain it had given

him to hear the sentiments which the plaintiff had expressed in regard to his daughter Alice, and the manner and warmth with which she had expressed herself. It speaks of his love for Alice as his child, whatever her faults might be; and of the fact that the breach was becoming wider between the plaintiff and her. It concludes with the expression of a belief that the union between himself and the plaintiff would be anything but a happy one, and respectfully asks to be released from the engagement.

The conversation referred to in the letter was testified to by the defendant; and he was contradicted by the plaintiff's testimony in respect to several material particulars.

The defendant offered evidence to prove that, some time after the letter was written, the plaintiff, in speaking of Alice to a third person, said: "I hate her. She shall never live with me; and I will never live with her. George [the defendant] is ashamed of me, and wanted to take me out of the way. I will never go upon the farm to live." The jury were instructed to disregard this so far as it consisted of a statement of her then present feelings. But such an expression of her then present feelings in respect to past occurrences as is stated in the evidence offered would have some tendency to show what her past views had been on the same subjects, not only in regard to the daughter, but in regard to the intentions of the plaintiff and her determination not to live on the farm; and it was for the jury to consider whether the evidence did not corroborate the defendant's testimony as to the interview between him and the plaintiff. As to this evidence the exceptions are sustained.

The other rulings appear to be correct; but, as the evidence may be varied on a new trial, it is not necessary to discuss them.